**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Pok Sin BOWERS, Defendant-Appellant.**

**No. 80–7794
Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.
Unit B

Sept. 2, 1981.

William L. Kirby, II, Columbus, Ga. (court-appointed), for defendant-appellant.

William Adams, Asst. U. S. Atty., Macon, Ga., for plaintiff-appellee.

Before TJOFLAT, FAY and HENDERSON, Circuit Judges.

PER CURIAM:

Pok Sin Bowers was convicted, following a jury trial in the district court, for cruelty to a child in violation of the Georgia child abuse statute, Ga.Code Ann. § 26–2801(b) (1980), as it applies to a federal reservation through the Assimilative Crimes Act, 18 U.S.C. § 13 (1976). She appeals, asserting several grounds for reversal. None has merit, and we therefore affirm.

The facts developed before the jury were as follows. On the morning of March 26, 1980, Bowers, a resident of Fort Benning, Georgia, went to the home of a neighbor, Mrs. Galliday, and stated that she had struck her two and a half year old daughter, Kimberly, and that Kimberly might be dead. Record, vol. 2 at 7. According to Bowers, she struck Kimberly for wetting her pants, then Kimberly somehow fell into an empty bathtub. The two women immediately took Kimberly to the nearby Martin Army Hospital.

When Kimberly arrived at the hospital she had no heart beat and was not breathing. Dr. Broughton, a pediatrician, along with a cardiac arrest team and several other physicians attempted for forty-five minutes to resuscitate the child but were unsuccessful. Bowers told Dr. Broughton that she had been having a problem with Kimberly's bowel training and sometimes had responded to the problem by inflicting physical punishment on the child. Bowers admitted that earlier that day she had pushed Kimberly into the empty bathtub for not having used the bathroom properly.

Dr. Broughton found multiple bruises on Kimberly's chest, arms and head which appeared to have been present for a couple of

weeks. Dr. Grant, a pathologist, performed an autopsy which disclosed bruises on Kimberly's scalp, face, chest, back, and right lung, a scar on the inner surface of the lower lip, a fracture of the left side of her skull, a broken collar bone, a small tear in the liver and a lacerated heart which, the doctor concluded, was the immediate cause of death.

Appellant claims, on appeal, that the district judge committed reversible error in admitting, over her objection, testimony of Dr. Broughton concerning the "battered child syndrome." Dr. Broughton testified that battered child syndrome is a general term used to describe any kind of abuse or neglect to a child in the first three years of his life; the syndrome may arise from sexual, emotional, physical or nutritional abuse, and any resulting injuries are usually inconsistent with the parent's explanation of them. Dr. Broughton opined that Kimberly had been suffering from battered child syndrome, and that the nature of her injuries belied the history given by her mother.

The court was well within its discretion in allowing this testimony to come before the jury. Testimony describing the battered child syndrome has been approved in several state jurisdictions. *See, e.g., State v. Wilkerson*, 295 N.C. 559, 247 S.E.2d 905 (1978); *State v. Goblirsch*, 309 Minn. 401, 246 N.W.2d 12 (1976); *People v. Henson*, 33 N.Y.2d 63, 349 N.Y.S.2d 657, 304 N.E.2d 358 (1973); *People v. DeJesus*, 71 Ill.App.3d 235, 27 Ill.Dec. 448, 389 N.E.2d 260 (1979); *Ashford v. State*, 603 P.2d 1162 (Okl.Cr.1979); *Commonwealth v. Labbe*, 373 N.E.2d 227 (Mass.App.1978); *People v. Jackson*, 18 Cal. App.3d 504, 95 Cal.Rptr. 919 (4th Dist. 1971). Proof that a child suffers from the battered child syndrome may show that the parent's explanation of the child's injuries is a fabrication. *Henson*, 33 N.Y.2d at 74, 349 N.Y.S.2d 665, 304 N.E.2d at 364; *Jackson*, 95 Cal.Rptr. at 921. Moreover, evidence that the victim was a battered child, coupled with proof that the child was in the sole custody of the parent, may well permit the jury to infer not only that the child's injuries were not accidental but that they occurred deliberately, at the hands of the parent. *Henson*, 33 N.Y.2d at 74, 349 N.Y. S.2d 665, 304 N.E.2d at 364.

■ Appellant next argues that the trial court erred in sustaining the government's objection to questions put to Dr. Jack Raines regarding her intent to kill Kimberly. The trial court ruled:

> You can ask him whether he thinks she intended to mistreat the child on that date, but your question was did she intend to kill the child. She is not charged with murder. You can ask him about the question of intent as it relates to this case.

Record, vol. 2 at 158.

We fail to see how this line of questioning was relevant to any issue in the case. Appellant was not charged with murder; consequently, whether she intended to kill her child was of no moment. Furthermore, we think the doctor's opinion, given his limited role as a court appointed psychiatrist, of appellant's intent when she abused her child on the fatal morning of March 26, 1980, would have been speculative, at best, and thus devoid of probative value.

■ Appellant argues that the jury was unduly prejudiced by the government's introduction in evidence of a color photograph of the child's lacerated heart. The photograph was clearly relevant. Under Fed.R. Evid. 403, however, the court may have been required to exclude the evidence "if its probative value [was] substantially outweighed by the danger of unfair prejudice." The court's decision to allow the evidence, after striking this balance, is reversible error only if we find that it was an abuse of discretion. *United States v. Authement*, 607 F.2d 1129, 1131 (5th Cir. 1979). To be sure, the photograph had the potential to inflame the jury, but we consider it no more inflammatory than photographs that portray the sort of death suffered by the victim in this or any other case where the circumstances surrounding death are at issue. *United States v. Kaiser*, 545 F.2d 467, 476 (5th Cir. 1977). The photograph, here, was essential to the government's case if it was to meet its burden of showing that

appellant brought cruel and excessive physical force to bear on her child. We cannot say that the prejudice inherent in the photograph substantially outweighed its probative value. We hasten to add that the mere fact that appellant stipulated with the government as to the cause of death did not preclude the government from offering proof on that issue. *United States v. Spletzer*, 535 F.2d 950, 955 (5th Cir. 1976); *Parr v. United States*, 255 F.2d 86, 88 (5th Cir.), *cert. denied*, 358 U.S. 824, 79 S.Ct. 40, 3 L.Ed.2d 64 (1958).

■ Appellant contends that the court's final charge to the jury was faulty in two respects. First, she complains that the trial court refused to give her Requests to Charges Number One and Three, record, vol. 1, at 21, 23, which went to the issue of intent. Second, she claims that the trial court's remark, "Only the defendant really knows what her intent was," record, vol. 2, at 169, had the effect of shifting the burden of proof to her. The question for us "is whether the court's charge as a whole was a correct statement of law." *United States v. Grote*, 632 F.2d 387, 391 (5th Cir. 1980), *pet. for cert. filed*, 49 U.S.L.W. 3744 (1981).

Appellant's first contention is meritless. The trial court properly instructed the jury on the issues of intent. The court stated:

> Now, in this case, as in all criminal cases, before you would authorized [sic] to find the defendant guilty of the offense which has been charged against her, it must appear that these two things are true: First, that she did the thing with which she is charged. And second, that she did the thing knowingly and willfully, and with intent to evade or to violate the law which applies in such a situation.
>
> I charge you that a person who knowingly does an act which the law forbids, intending with bad purpose either to disobey or to disregard the law may be found to act with criminal intent. An act is done knowingly if it is done voluntarily, purposely and not simply because of mistake or inadvertence or some other innocent reason.

Record, vol. 2, at 168–69. Contrary to appellant's assertion, the jury was informed that the crime charged required both an act and intent. The court's instruction concerning how the jury was to determine intent was actually consistent with appellant's Request to Charge Three. The court explained that appellant's intent could be decided by "looking at all the circumstances surrounding what was done ..." in addition to statements, acts or omissions, "which would aid [the jury] in determining her state of mind." Record, vol. 2, at 169–170. Appellant's second contention is likewise without merit. The court's statement that only appellant really knew her intent was merely an effort by the court to advise the jury that "intent ordinarily may not be proved directly, because there is no way of fathoming or scrutinizing the operations of the human mind." *United States v. Chiantese*, 560 F.2d 1244, 1256 (5th Cir. 1977) (en banc), *cert. denied*, 441 U.S. 922, 99 S.Ct. 2030, 60 L.Ed.2d 395 (1978), quoting with approval, *Federal Jury Practice & Instructions* § 14.13 (1977). The court's explanation in no way shifted the burden of proof to appellant nor did it deviate from our mandate in *Chiantese* and *United States v. Lentz*, 624 F.2d 1280, 1290 (5th Cir. 1980), *cert. denied*, 450 U.S. 995, 101 S.Ct. 1696, 68 L.Ed.2d 194 (1981).

■ Appellant asserts that the court committed reversible error in taking judicial notice that "Fort Benning, Georgia, is on land which is property of the United States and is under the jurisdiction of [the] United States." Record, vol. 2, at 173, 181. The alleged vice in this instruction is the court's failure to inform the jurors that they were not bound to accept the noticed fact. Appellant cites Fed.R.Evid. 201(g), which states:

> In a criminal case, the Court shall instruct the jury that it may, but is not required to accept as conclusive any fact judicially noticed.

Rule 201 "governs only judicial notice of adjudicative facts," Fed.R.Evid. 201(a), and not legislative facts. Consequently, appellant's argument turns on the characterization of the fact judicially noticed. The Eighth Circuit has observed that

Legislative facts are established truths, facts or pronouncements that do not change from case to case but apply universally, while adjudicative facts are those developed in a particular case. *United States v. Gould*, 536 F.2d 216, 220 (8th Cir. 1976). The fact that Fort Benning is under federal jurisdiction is a well established fact appropriate for judicial notice. *United States v. Benson*, 495 F.2d 475, 481–82 (5th Cir.), *cert. denied*, 419 U.S. 1035, 95 S.Ct. 519, 42 L.Ed.2d 310 (1974). Unlike an adjudicative fact, this fact does not change from case to case but, instead, remains fixed. Consequently, the court committed no error in failing to instruct the jury it could disregard the judicially noticed fact.

Appellant's final contention is that the record is devoid of any evidence, circumstantial or direct, establishing that the charged offense was committed within a federal enclave; the trial court therefore lacked subject matter jurisdiction. Although territorial jurisdiction and venue are essential elements of any offense, this Circuit has held that territorial jurisdiction or venue are not to be treated as essential elements in the sense that they must be established by proof beyond a reasonable doubt. *United States v. White*, 611 F.2d 531, 536 (5th Cir.), *cert. denied*, 446 U.S. 992, 100 S.Ct. 2978, 64 L.Ed.2d 849 (1980). Rather, venue, i.e., the location of the criminal activity, need only be established by a preponderance of the evidence. *United States v. Luton*, 486 F.2d 1021, 1023 (5th Cir.), *cert. denied*, 417 U.S. 920, 94 S.Ct. 2626, 41 L.Ed.2d 225 (1974); *Gov't of Canal Zone v. Burjan*, 596 F.2d 690, 694 (5th Cir. 1979).

Applying this standard·of proof, we find that the evidence was sufficient to show that appellant physically abused her child within the confines of Fort Benning. Appellant resided on that military reservation; her statements to Mrs. Galliday and to Dr. Broughton indicated that the events that culminated in Kimberly's death took place there. These admissions were sufficient for the jury to infer that the charged crime was committed where the venue was laid, and that is all that was required. *Luton*, 486 at 1023.

We find nothing approaching reversible error in this record; accordingly, the conviction is

AFFIRMED.