**STATE of Utah, Plaintiff and Appellee,**

v.

**Kevin H. MAGEE, Defendant
and Appellant.**

**STATE of Utah, Plaintiff and Appellee,**

v.

**Lezlie MAGEE, Defendant
and Appellant.**

**Nos. 910604–CA, 910582–CA.**

Court of Appeals of Utah.

Sept. 4, 1992.

Rehearing Denied Oct. 9, 1992.

D. Bruce Oliver (argued), Salt Lake City, for defendants and appellants.

R. Paul Van Dam, Atty. Gen., and Marian Decker, Asst. Atty. Gen. (argued), Salt Lake City, for plaintiff and appellee.

Before BILLINGS, JACKSON and RUSSON, JJ.

## OPINION

JACKSON, Judge:

In a bench trial, Kevin H. Magee and his wife Lezlie Magee were convicted under

Utah Code Ann. § 76–5–109(3)(b) (1990) of child abuse, a class B misdemeanor. The appellants filed separate appeals that have been consolidated for disposition in this appeal. We affirm both convictions.

### FACTS

Kevin H. Magee and Lezlie Magee were the parents of the child in question, Karissa Magee, who is deceased. Karissa was delivered by cesarean section August 2, 1990, four weeks premature. Karissa did not suffer any complications and the Magees took her home. They resided in the basement of Mr. Magee's parents' home with their other children. Because of the cesarean section, Ms. Magee spent the first few days at home in bed recovering from the operation.

As a result of some serious back problems, Mr. Magee could not work and remained at home. He was the main caretaker of the home and children while Ms. Magee was recovering. Shortly after giving birth to Karissa, Ms. Magee was depressed and confessed difficulty in feeling love for Karissa. Also, both she and Mr. Magee had a tendency to misuse prescription drugs by taking more than the recommended dosage and mixing prescriptions.

While Karissa initially appeared to be a normal healthy child, such was not the case. Medical testimony showed that Karissa suffered from a seizure disorder that would cause her to periodically "blank out." She would turn pale, have a blank stare and be unresponsive. The Magees undertook various means to snap Karissa out of these seizures. Different revival measures used by the Magees included "tapping" Karissa's face, shaking her or putting her in the shower.

On September 8, 1990, Ms. Magee discovered Karissa having a seizure and found her pale and not breathing. Ms. Magee yelled for Mr. Magee who ran into the room and tried to take Karissa from Ms. Magee in order to perform CPR on her. But Ms. Magee would not give up Karissa. Mr. Magee testified he tore Karissa out of Ms. Magee's arms and ran to his mother's car. His mother drove them to the hospital while Mr. Magee attempted CPR on Karissa on the way.

At the hospital, the emergency room doctors managed to resuscitate Karissa. However, she remained on life support systems. After a week it became apparent that Karissa had suffered severe neurological damage and it would not be possible to resuscitate her brain. Life support was then removed and Karissa died almost immediately. The medical examiner, Dr. Edward Leis, determined the cause of death to be anoxic encephalopathy, (brain damage caused by a lack of oxygen), likely caused by a seizure disorder.

At the time of Karissa's admittance to the hospital, the emergency room doctors noticed bruises on her right cheek, and subsequent examinations revealed a fracture of her left femur. As a result, the doctors were suspicious of child abuse and notified the police. A postmortem autopsy was conducted that revealed further injuries, including skull fractures, brain contusions and broken ribs.

Each of the Magees was charged with child abuse in violation of Utah Code Ann. § 76–5–109(2)(a) (1990), a second degree felony, along with lesser included offenses. At the close of the state's evidence, defense counsel moved to dismiss. The trial court dismissed the second degree felony charge for lack of evidence of the Magees' intentional or knowing infliction of Karissa's injuries. However, counsel's motion to dismiss the lesser included offenses was denied.

At trial, Dr. Edward Leis testified concerning the different dates various injuries occurred. He estimated the skull fractures to be from one to two weeks old, the brain contusions to be approximately nine days old, the femur fracture to be approximately seven days old, the fracture of the number two rib to be more than two weeks old, and the fracture of the number three rib to be about two days old.

Dr. Karen Hansen, a member of the child protection team at Primary Children's Hospital also testified. She was consulted the day after Karissa's admission to the hospi-

tal because of concern of physical abuse. She performed a physical examination of Karissa noting bluish-brown bruises on her face, one on the lower left chin and four on the right side of her face, and abrasions about the nose. She also found a bruise on Karissa's inner right thigh. She noted that children of this age are unable to get around and injure themselves in this manner.

She later discussed with the Magees these injuries and the injuries found in the subsequent medical examinations and autopsy. She was satisfied with the Magees' explanation regarding the nose area, but not the other injuries, including a corner fracture of the left femur, skull fractures, and fractures of the second and third ribs on the right posterior. She testified that one of the rib fractures had callus formation, indicating that healing had begun and the injury occurred more than ten days before the examination. The other rib fracture had no callus formation, indicating that the fracture was less than ten days old.

Mr. Magee suggested to Dr. Hansen that the thigh bruises and femur fracture might have been caused by his grabbing action. She determined that this explanation was inadequate because the femur injury would require multiple back and forth limb flails. His explanation for the rib fractures was that they occurred during resuscitation. However, she determined this to be inconsistent with the injury due to the high posterior location of the unrelated fractures that indicated a direct blow.

Ms. Magee had told Dr. Hansen that she had slapped Karissa as hard as she could during one of Karissa's limp spells a few days earlier. Based on her examination and experience, Dr. Hansen opined that Karissa's injuries fit the diagnosis of the battered child syndrome.

The trial judge found the Magees guilty of inflicting or permitting another to inflict physical injury upon a child. The Magees raise several issues on appeal that challenge the trial judge's findings.

## ISSUES

■ The first issue the Magees raise is whether the common law defense of necessity entitles them to a dismissal or an acquittal. Assuming arguendo, that the defense of necessity is the law of Utah, we need not reach the issue because it is relevant only to Karissa's injuries incurred during the episode when she was admitted to the hospital and not to preexisting injuries. Further, this defense was not raised at trial and it is not mentioned in the record. As we stated in *State v. Webb,* 790 P.2d 65, 77 (Utah App.1990), issues raised on appeal for the first time will not be considered. Accordingly, we decline to address this issue.

The Magees' main contention is that the trial court failed to find each of them guilty beyond a reasonable doubt. They point to the ambiguities and inconsistencies in the record for support of this contention. They contend that the court failed to determine on a separate and individual basis the elements of their respective charges and thus, each is entitled to a reversal.

## STANDARD OF REVIEW

■ "The ultimate test of the adequacy of a trial judge's findings is whether they are sufficiently comprehensive and pertinent to the issues to provide a basis for decision." *State v. Hurst,* 821 P.2d 467, 471 (Utah App.1991). The appellate court will sustain the trial court's findings unless they are against the clear weight of the evidence, or if the appellate court otherwise reaches a definite and firm conviction that a mistake has been made. *State v. Walker,* 743 P.2d 191, 193 (Utah 1987).

## ANALYSIS

■ The Magees were convicted under Utah Code Ann. § 76–5–109(3)(b) (1990) which states:

Any person who inflicts upon a child physical injury or, having the care and custody of such child, *causes or permits another to inflict physical injury upon a child* is guilty of an offense as follows:
. . . .

(b) If done recklessly, the offense is a class B misdemeanor.

(Emphasis added.)

Utah Code Ann. § 76–5–109(1)(b) (1990) defines "physical injury" as "impairment of the physical condition including, but not limited to, any contusion of the skin, laceration, failure to thrive, malnutrition, burn, fracture of any bone, subdural hematoma, injury to any internal organ, any injury causing bleeding, or any physical condition which imperils a child's health or welfare."

Here, the trial court found that physical injury had been inflicted on Karissa while she was in the care and custody of the defendants. The findings of physical injury are direct and clear. Indeed, the trial court found that Karissa suffered from a broken rib (the number two rib) more than two weeks prior to her death and from contusions to the brain one to two weeks prior to her death. Moreover, the evidence showed that Karissa's injuries were consistent with the "battered child syndrome" indicating ongoing mistreatment of which Mr. Magee had to be aware even if it had been inflicted by Ms. Magee.

While there is no dispute that Karissa suffered physical injury, the Magees claim that the trial court's lack of clarity in the findings regarding the timing of Karissa's injuries show that the court failed to find them guilty beyond a reasonable doubt. The trial court stated:

[T]he skull fractures, the broken ribs, the contusions to the brain were not apparent from the skeletal survey, the CAT scan and the other examinations which were provided. And because of that fact and the inconclusiveness of the age of those injuries, the [c]ourt cannot find beyond a reasonable doubt that those injuries occurred when the child was in the sole care and custody of these defendants.

The [c]ourt does find, however, that the contusions to the brain and the fracture of the second rib were injuries which occurred while the child was in the care and custody of these two defendants. And the court finds that those injuries were caused by either slapping or shaking of the child and the rib injury caused by the holding of the child in such a manner as to pinch it to a degree sufficient to break that second rib.

Further, the trial court concluded: "There is no question in the [c]ourt's mind that the blow to the head of the child struck by one of these parties with both having custody and care of the child and both admitting that those occurred in their presence constituted a physical injury to the child."

There is no doubt that Karissa was in the sole care and custody of the Magees during the time that the contusions to the brain and the broken number two rib occurred. The trial court did make a general statement that the contusions to the brain and the broken ribs could not be determined beyond a reasonable doubt to have been caused during the time that the Magees had sole care and custody of Karissa. But, in the next paragraph, the court qualified that statement by specifying that the contusions to the brain occurred and the number two rib was indeed broken during the time Karissa was in the Magees' custody. The trial court concluded that the "blow to the head" constituted a physical injury to the child.

For the Magees to be convicted, the trial court would have to find each of them guilty beyond a reasonable doubt of being reckless in their treatment of Karissa. Utah Code Ann. § 76–2–103(3) states:

A person engages in conduct: (3) Recklessly, or maliciously, with respect to circumstances surrounding his conduct or the result of his conduct *when he is aware of but consciously disregards a substantial and unjustifiable risk* that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

(Emphasis added).

The Magees contend that the trial court found their efforts to resuscitate Karissa

justifiable even though those efforts may have caused the injuries she suffered. They point to the following findings to support their argument:

> [T]hat the child in question on September 8th was only a little over four weeks old, weighed only a little more than six pounds, and that for these parties to shake a child of that age and condition or to slap a child of that age and condition in the course of attempts at resuscitation had to be aware of the substantial and *justifiable* risk that those circumstances would result in physical injury to the child and consciously disregard that risk.

> The [c]ourt further finds that that risk was of such a nature and degree under these circumstances that that disregard constituted a gross deviation from the standard of care that an ordinary person would exercise viewing these facts from the advantage [sic] point of these defendants.

(Emphasis added.)

When read in context with the trial judge's other findings, it appears he misspoke when he stated the Magees "had to be aware of the substantial and *justifiable* risk" (emphasis added) of harm to Karissa in taking such aggressive measures to resuscitate her.[1] While it is justifiable to make every effort to resuscitate one in need of immediate medical attention, the trial court found that the circumstances surrounding Karissa's injuries and subsequent death did not justify the Magees' actions.

The trial court noted that Karissa was a four week old infant, weighing approximately six pounds at the time of her death. The court concluded that while her seizures must have alarmed the Magees, it was not reasonable that they would slap, strike, or shake such a fragile child. Indeed, Ms. Magee admitted that she had slapped Karissa as hard as she could in order to get her to breathe. The bruises found on Karissa's face when she was admitted to the hospital support her admission that this occurred. The court found that a reasonable person would be aware of the risk of harm to a fragile infant that would arise from slapping her as hard as one could, and that Ms. Magee knew of that risk and consciously disregarded it.

The evidence of Mr. Magee's abuse of Karissa is not as direct. He only admitted to "tapping" her face in order to revive her. The statute, however, only requires that one cause *or* permit another to inflict physical injury upon a child. The evidence supports the trial court's finding that Mr. Magee knew about the injuries being inflicted on Karissa and permitted them to happen. He testified that he was home all the time and was primarily in charge of her care. Both medical experts testified that the high posterior rib injury occurred ten days to two weeks prior to Karissa's admission to the hospital. Further, Dr. Hansen testified that the "constellation" of unexplained injuries to this tiny infant revealed that she was a victim of "battered child syndrome" i.e., ongoing mistreatment. From this evidence, the trial court could reasonably infer that Mr. Magee knew of and recklessly permitted the physical injuries to occur, even if the injuries were not inflicted by him. *United States v. Bowers,* 660 F.2d 527, 529 (5th Cir.1981) (inference based on battered child syndrome was permissible). The trial court found his behavior to be reckless.

Accordingly, we cannot say that the findings are against the clear weight of the evidence nor that they are insufficiently comprehensive and pertinent to support the decision.

### CONCLUSION

The trial court's findings are sufficient to support the determination that each of the Magees was guilty of misdemeanor child abuse beyond a reasonable doubt.

BILLINGS and RUSSON, JJ., concur.

---

1. It is also possible that the court reporter missed the prefix "un" in transcribing the judge's oral findings.