[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-12174

_____

D.C. Docket No. 1:13-cr-00161-CAP-JSA-2

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

TAVAUGHN SAYLOR,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(September 8, 2015)

Before JORDAN and FAY, Circuit Judges, and WALKER,[*] District Judge.

PER CURIAM:

_____

[*] Honorable Mark E. Walker, United States District Judge for the Northern District of Florida, sitting by designation.

Tavaughn Saylor appeals his conviction, following a jury trial, for possession of a firearm by a convicted felon.  *See* 18 U.S.C. § 922(g)(1).  Mr. Saylor argues that the district court erred by (1) taking judicial notice that one of his prior convictions was a felony punishable by more than one year in prison, without instructing the jury that it was not required to accept the noticed fact, and (2) failing to remedy an alleged error under *Batson v. Kentucky*, 476 U.S. 79 (1986).  After reviewing the record and the parties' briefs, and with the benefit of oral argument, we affirm Mr. Saylor's conviction.

## I

First, we review Mr. Saylor's argument that the district court erroneously directed a verdict for the government when it took judicial notice of the felony nature of one of his prior convictions, under Federal Rule of Evidence 201(f), without providing a limiting instruction to the jury.  We review the district court's evidentiary rulings, including a decision on whether to take judicial notice, for abuse of discretion.  *See United States v. Marizal*, 421 F.2d 836, 837 (5th Cir. 1970).[1]  Similarly, we review a district court's jury instructions under the same deferential standard, and we reverse only if there is a reasonable likelihood that the

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

2

error affected the defendant's substantial rights.  *See United States v. Wright*, 392 F.3d 1269, 1277 (11th Cir. 2004).

## A

To prove that a defendant is guilty of being a felon in possession of a firearm, the government must show (1) that the defendant has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year, (2) that the defendant was in knowing possession of a firearm, and (3) that the firearm was in or affecting interstate commerce.  *See* 18 U.S.C. § 922(g)(1); *United States v. Beckles*, 565 F.3d 832, 841 (11th Cir. 2009).  At issue here is whether the district court abused its discretion by taking judicial notice of the fact that Mr. Saylor's prior conviction was punishable by more than one year.

During Mr. Saylor's trial, the government asked Detective Andrew Thorne about Mr. Saylor's 2009 New York conviction, which was based on a guilty plea to attempted criminal possession of a weapon in the second degree.  The government asked if the conviction was a felony offense, to which Detective Thorne responded in the affirmative.  Detective Thorne then testified that the New York state court sentenced Mr. Saylor to one year of imprisonment.  The government asked Detective Thorne whether Mr. Saylor could have received more than one year in prison, and Detective Thorne answered that "[i]t depends on the

3

charge."   When asked about Mr. Saylor's "particular charge," Detective Thorne again replied that Mr. Saylor "was sentenced to one year."  [D.E. 62 at 39]

Before the jurors were brought into the courtroom the next morning of trial, the government asked the district court to take judicial notice of the fact that Mr. Saylor's prior New York conviction was "a violent felony offense that is punishable by more than a year in prison."  Mr. Saylor objected, arguing that the district court would be directing a verdict on an element of the charged crime.  The government responded that the "ultimate question" was whether Mr. Saylor was the same individual who had been convicted in 2009 in New York of attempted criminal possession of a weapon—something Mr. Saylor disputed at trial.  Mr. Saylor replied that Federal Rule of Evidence 201 allows a district court to take notice of only adjudicated facts, and because this was a legislative fact, it was not proper for the district court to take judicial notice.  Mr. Saylor never requested that the district court, under Rule 201(f), instruct the jury that it could disregard the noticed fact.  [*Id.* at 3-6]

The government provided the district court with a copy of the New York statute under which Mr. Saylor was convicted.  The district court then overruled Mr. Saylor's objection.  After the jury was called in, at the government's request, the district court took judicial notice that a conviction in New York for attempted criminal possession of a weapon under § 265.03 "is a class D violent felony

4

punishable by more than one year."  Mr. Saylor also objected, in part on the same grounds, during a motion for judgment of acquittal and during the charge conference.  These objections were overruled.  [*Id.* at 6–7, 14-15, 20–21]

**B**

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  *In re Winship*, 397 U.S. 358, 364 (1970).  The Clause prohibits a district court from giving an instruction that shifts the burden of proof to the defendant by means of a burden-shifting or conclusive presumption.  *Sandstrom v. Montana*, 442 U.S. 510, 524 (1979).

Federal Rule of Evidence 201 provides that a district court may take judicial notice of an adjudicative fact that is not subject to reasonable dispute because it is (1) generally known within the court's territorial jurisdiction, or (2) accurately and readily determinable from sources whose accuracy cannot reasonably be questioned.  *See* Fed. R. Evid. 201 (a)–(b).  "In a criminal case, the court must instruct the jury that it may or may not accept the noticed fact as conclusive."  Fed. R. Evid. 201(f).

Rule 201 does not apply to legislative facts.  *See United States v. Bowers*, 660 F.2d 527, 530 (5th Cir. Unit B Sept. 1981).  "Legislative facts are established

5

truths, facts[,] or pronouncements that do not change from case to case but apply universally, while adjudicative facts are those developed in a particular case." *Id.* at 531 (internal quotation marks and citation omitted). When the district court judicially notices a legislative fact, it need not instruct the jury that it may decline to accept the noticed fact. *See id.*

We confronted a similar issue in *United States v. Anderson*, 782 F.2d 908 (11th Cir. 1986), a case involving an alleged violation of the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. § 1961 *et. seq.*, which requires the commission of two state-law felony offenses. We determined in *Anderson* that the felony nature of the predicate state offenses is a legislative fact appropriate for judicial notice, and that no further instruction was needed. *See* 782 F.2d at 917. *See also United States v. Clements*, 588 F.2d 1030, 1037 (5th Cir. 1979) (concluding that the district court did not err by instructing the jury on the state law predicate offense the defendant allegedly violated under 18 U.S.C. § 1955, even though the government never requested the court to take judicial notice of the statute).

Mr. Saylor did not in the district court, and does not now on appeal, contest the accuracy of the district court's noticed fact. His only argument is that the district court violated his due process rights by relieving the government of its burden to prove an element of his charged offense. Under our prior precedent, he

is wrong. The district court did not abuse its discretion because the felony nature of a state-law offense is a legislative fact subject to judicial notice. *See Anderson*, 782 F.2d at 917. Because the fact at issue here was legislative and not adjudicative, Rule 201 did not apply, and the district court was not required to instruct the jury that it could decline to accept the noticed fact. *See Bowers*, 660 F.2d at 530–31.

## II

Next, we review Mr. Saylor's argument that the district court erred in failing to take remedial action after concluding that the government's peremptory strike of a prospective alternate juror, who was a white male, violated *Batson*. Where a party alleges a *Batson* violation, we review jury selection *de novo*, but we review the district court's underlying factual findings for clear error. *See United States v. Campa*, 529 F.3d 980, 992 (11th Cir. 2008).

## A

Mr. Saylor's *Batson* challenge was based on an assertion that the government used its peremptory strikes to remove jurors based on race and gender. The record shows that the government exercised all seven of its peremptory strikes against white persons, five of whom were men. The seventh strike, at issue here, was against a white male and a prospective alternate. At first, the district court

overruled the defense's objection, finding Mr. Saylor had not "laid out any kind of prima facie case." [D.E. 61 at 30]

Following a lunch break, the district court said that it had "been reading some law" and revisited Mr. Saylor's *Batson* challenge. [*Id.* at 34] The district court did not affirmatively find that Mr. Saylor had met his prima facie burden, but stated "Well, all right. Well, let me ask the government to proffer a reason for their strikes then one at a time." [*Id.* at 34–35]

The government offered similar reasons for its first six strikes—five individuals stated that they were not certain that all felons should lose their gun rights and the sixth stated that she had concerns and/or negative opinions about federal investigations like the IRS scandal and the Benghazi investigation. The district court found that the six reasons were "legitimate" and "really the reason the strike was exercised." [*Id.* at 35–40]

The government used its seventh strike on a prospective alternate juror, Juror 34. The government said that it struck Juror 34—a white male—because he had a daughter who worked for Homeland Security, and it did not know "how that was going to play." Mr. Saylor argued that such a reason was even more supportive of an inference that the strike was exercised based on gender or race. The district court never definitively stated how it ruled on the strike, and it never said whether the government's proffered reason was credible or not.

The district court, however, appeared to make statements supporting both sides of the issue.  On one hand, the district court stated "I think [the defendant] make[s] a pretty valid point as to Juror 34," [*id.* at 40]; and "I tend to agree with [the defendant].  It's crazy to me to strike a juror because his daughter works for Homeland Security." [*Id.* at 41]  On the other hand, the district court also stated "I don't have to make that decision [on the government's strike of the alternate] right now . . . until one of the two alternates come into the deliberation, which is about a 50/50 chance with the snow coming," [*id.* at 42] and noted that the jurors were "under instructions not to discuss the case with each other." [*Id.* at 42]

After making these statements, the district court said that "I will note for the record . . . on this alternate . . . I have seen some of the dumbest strikes on behalf of the government," [*id.* at 42] and that "I can take judicial notice since I have been here, there is not a lot of—what's the word I want—logic to some of their strikes." The district court then stated: "So I guess if there is not any logic to the strikes, it is race neutral.  All right." [*Id.* at 43]

The district court did not reseat Juror 34, so it effectively allowed the government's strike and denied Mr. Saylor's *Batson* challenge.  The alternate who was chosen in Juror 34's place did not deliberate.

On appeal, Mr. Saylor contends that the district court (1) erroneously ruled that he failed to make a prima facie case of race and gender discrimination, (2)

9

made the prima facie issue moot under *Hernandez v. New York*, 500 U.S. 352 (1991) (plurality opinion), when it asked the government to explain its peremptory strikes, and (3) erred in finding that a *Batson* violation was subject to harmless error review.  The government disputes that the district court concluded that Mr. Saylor made a prima facie case and argues that Mr. Saylor could not have made such a case based on statistics alone.  The government also argues that Mr. Saylor cannot show that its reasons for striking Juror 34 were pretext for discrimination and that any error was ultimately harmless, because the alternate juror never sat with the jury during deliberations.[2]

## B

Generally, a party may exercise its peremptory challenges on any legitimate ground related to that party's view of the potential outcome of the case.  *See Batson*, 476 U.S. at 89.  Striking a juror on the basis of the juror's race or gender,

---

[2] There is currently an undecided issue in our circuit, and a circuit split elsewhere, about whether a *Batson* error is structural or subject to harmless error analysis when the discriminatory strike is on a prospective alternate and no alternate ends up deliberating.  *Compare United States v. Harris*, 192 F.3d 580, 587–88 (6th Cir. 1999) (holding that the selection of alternate jurors "affects the entire conduct of the trial," and thus, a "district court's decision" on "the peremptory challenges of . . . alternate jurors is not subject to harmless error review"), *with United States v. Lane*, 866 F.2d 103, 106 n.3 (4th Cir. 1989) (stating—in dicta—that if a discriminatory strike was made against a prospective alternate juror, and the alternate juror who replaced the struck juror was never called to serve as a deliberating member of the jury, the defendant "would not have been prejudiced by the peremptory challenge . . . regardless of the stated reason"), *and Nevius v. Sumner*, 852 F.2d 463, 468 (9th Cir. 1988) (holding that a *Batson* challenge was harmless, because even though the prosecutor's reasons for striking a prospective alternate juror were vague, the replacement juror was never called to serve in the defendant's case).  We also note that the Supreme Court recently applied a harmless error analysis to a *Batson* claim.  But that claim was reviewed under AEDPA, and the defendant did not argue the error warranted automatic reversal.  *See Davis v. Ayala*, 135 S. Ct. 2187, 2197 (2015).

however, violates the Equal Protection Clause. *See id.* (race); *J.E.B. v. Alabama ex rel T.B.*, 511 U.S. 127, 146 (1994) (gender). As a result, the defendant may challenge the government's peremptory strikes if they raise an inference of purposeful discrimination. *See Batson*, 476 U.S. at 96. A defendant has standing to present a *Batson* claim where the government uses race as the sole reason to exclude a juror, even if the dismissed juror and the defendant are of different races. *See Powers v. Ohio*, 499 U.S. 400, 415 (1991).

*Batson* established a three-step, burden shifting framework for determining whether peremptory strikes are the result of racial animus. *See United States v. Houston*, 456 F.3d 1328, 1335 (11th Cir. 2006). First the defendant must establish a prima facie case sufficient to raise an inference of discriminatory intent. Second, the government may rebut the inference by articulating legitimate, race-neutral reasons for its peremptory strikes. Third, the court must evaluate the credibility of the government's proffered reasons in light of all evidence. *See id.*

At the prima facie case step of the *Batson* inquiry, the district court must consider the peremptory strikes used to select alternates together with those used to select the initial 12 jurors. *See United States v. Hill*, 643 F.3d 807, 838 (11th Cir. 2011). The prima facie case determination cannot be based on numbers alone, but should be made in light of the totality of the circumstances. *See id.* at 839. The defendant, therefore, "must point to more than the bare fact of the removal of

11

certain venirepersons and the absence of an obvious valid reason for the removal." *United States v. Allison*, 908 F.2d 1531, 1538 (11th Cir. 1990) (internal quotation marks and citation omitted).

In deciding whether a defendant has made a prima facie case under *Batson*, the district court should consider any circumstances that support an inference of discrimination, such as a pattern of strikes against jurors of a given race or gender, comments by the prosecutor during *voir dire* suggesting a discriminatory purpose, and whether venire members of one race or gender were excluded even though they possessed the same qualities as venire members of a different race or gender who were chosen. *See id. See also United States v. Robertson*, 736 F.3d 1317, 1326 (11th Cir. 2013) (holding that the district court could consider the subject matter of the case being tried and the racial composition of the venire members).

At the second step of the *Batson* inquiry, the government must provide a race-neutral explanation for its strikes. *See Hill*, 643 F.3d at 837. The reason provided does not need to be "good," and in fact, can be "irrational, silly[,] or superstitious." *See id.* (internal quotation marks and citation omitted). But it cannot be discriminatory. *See id.* The defendant bears the ultimate burden of persuasion to show that the government's strike was discriminatory. *See Houston*, 456 F.3d at 1335.

12

During the third step, "the district court's determination concerning the actual motivation behind each challenged strike amounts to pure factfinding, and . . . we will reverse the district court's determination only if it is clearly erroneous." *United States v. Stewart*, 65 F.3d 918, 923 (11th Cir. 1995). We therefore keep in mind that the district court's "assessment of the prosecutor's credibility" is "entitled to great deference." *Houston*, 456 F.3d at 1337 (internal quotation marks and citation omitted).

## C

We have said that the district court should not require a party to provide reasons for its peremptory strikes without first finding that the challenging party has established a prima facie case of discrimination. *See Robertson*, 736, F.3d at 1326. *See also Allison*, 908 F.2d at 1537. In *Hernandez*, where the prosecutor had offered a reason for its peremptory strikes without first being prompted by the trial court, the Supreme Court said that, once the government has offered a non-discriminatory reason for its peremptory strikes and the trial court has ruled on the ultimate question of discrimination, the preliminary issue of whether the defendant established a prima facie case becomes moot, and the standard inquiry into the objecting party's prima facie case is unnecessary. *See Hernandez*, 500 U.S. at 359, 372.

13

In *Stewart*, however, we declined to extend this aspect of *Hernandez*, noting that *Hernandez* was a plurality opinion, which was not binding, and that in *Hernandez*, the prosecutor had offered reasons for its peremptory strikes without first being prompted by the court. *See Stewart*, 65 F.3d at 924. We likewise decline to extend *Hernandez* to the circumstances in this case.

The district court here explicitly ruled that Mr. Saylor had not made a prima facie case that the government used its strike against Juror 34 in a discriminatory manner. [D.E. 61 at 30] Although we acknowledge that the district court later asked the government to provide a non-discriminatory reason for its strike, we think it critical that the district court never changed its prior ruling. *See Stewart*, 65 F.3d at 923 (giving "great deference to the district court's finding as to the existence of a prima facie case"). And even if we were examining the district court's finding *de novo*, we would come to the same conclusion. Mr. Saylor has pointed to no evidence, either in the district court or on appeal—other than the number of white and male venire members that the government struck—in making his prima facie case. This is not sufficient under our precedent. *See Hill*, 643 F.3d at 839. *See also Allison*, 908 F.2d at 1538.

As Mr. Saylor failed to establish that the government violated *Batson*, there was no need for the district court to take remedial action. Thus, we need not

decide whether a *Batson* error that resulted in the striking of an alternate juror, when no alternate deliberated, is subject to harmless error analysis.

## III

We conclude that the district court did not err in taking judicial notice of the felony nature of Mr. Saylor's prior conviction, or in its ruling on Mr. Saylor's *Batson* challenge concerning Juror 34.  We thus affirm Mr. Saylor's conviction.

**AFFIRMED.**