[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 19, 2006
THOMAS K. KAHN
CLERK

No. 04-16524

_____

D. C. Docket No. 04-00179 CR-H-S

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ALONZO HOUSTON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(July 19, 2006)**

TJOFLAT and COX, Circuit Judges, and GEORGE[*], District Judge.

COX, Circuit Judge:

_____

[*]Honorable Lloyd D. George, United States District Judge for the District of Nevada, sitting by designation.

We consider in this appeal the issue of racial discrimination in jury selection, applying *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712 (1986), and its progeny. We also consider whether there was constitutional or statutory error under *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005). We affirm the convictions, vacate the sentences, and remand for resentencing.

## I. Background

Alonzo Houston ("Houston") was charged with armed robbery of a credit union, in violation of 18 U.S.C. § 2113(a) and (d) ("Count I"), brandishing a firearm during the commission of a crime, in violation of 18 U.S.C. § 944(c) ("Count II"), and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) ("Count III").

During jury selection, both the prosecution and the defense exercised peremptory strikes to remove prospective jurors. The procedure the district court followed in selecting the jury was as follows. First, the 32-person venire was seated; the twelve-person jury was ultimately selected from the first 28. (R.1-68 at 30.) The prosecution was given six peremptory strikes, and the defense was given ten. (R.1-68 at 30.) Of the venire members remaining after the exercise of all strikes, the jury would consist of the first twelve. (R.1-68 at 30.) Two alternates were selected from the remaining four jurors, with each party being given one peremptory strike. (R.1-68

2

at 30.) Of the first 28 venire members from which the twelve-person jury was selected, ten were black. Appellee's Br. at 8-9, 8 n.1.

The members of the venire were questioned as a group, and they responded by raising their hands. (R.1-68 at 2-11, 13-29.) The attorneys were then permitted to ask questions and follow up with any venire member whose answer to a general question piqued their interest. (R.1-68 at 13-29.) One of the general questions asked was "Does anybody have a family member who has been convicted of a crime?" (R.1-68 at 24-29.) Eight of the 28 venire members answered this question in the affirmative. (R.1-68 at 24-29.) Of those eight, four were white, and four were black. Appellant's Br. at 6; Appellee's Br. at 3.[1]

After the questioning concluded, both the prosecution and the defense simultaneously submitted their "strike sheets," which indicated the jurors whom each attorney wished to strike through a peremptory challenge. Amazingly, none of the proposed strikes overlapped. The prosecution wished to strike six venire members, five of whom–Small, Taylor, O'Neal, Smith, and Julks–were black. (R.1-68 at 31.) The defense wished to strike ten venire members, all of whom were white. (R.1-68 at 31.) When each side was made aware of the other side's proposed strikes, Houston

---

[1]One additional white venire member, a Ms. Steele, also answered the question in the affirmative, but she was not part of the 28-person venire from which the twelve-person jury was selected. The Government ultimately struck her when alternates were being selected.

3

asserted an objection based on *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712

(1986).[2]   We set out in its entirety the colloquy between the court and counsel

discussing this objection:

> THE COURT: Any *Batson* challenges for the government?
> MR. SALTER: No, sir.
> THE COURT: Any from the defendant?
> MR. COYLE: Yes, sir.  That being that 5 out of the 6 strikes of the government were black.
> THE COURT: I might say parenthetically all of your strikes were white.  Just parenthetically, and I mean that for what it's worth.
> MR. COYLE: You're correct.
> THE COURT: And I need to state, for the record, the defendant is black, and that the U.S. Attorney is black, and that the defendant's attorney is white.
> MR. COYLE: Ms. Lola Small.
> THE COURT: Pardon?
> MR. COYLE: Ms. Lola Small, we would challenge her.
> THE COURT: Let me find her first.
> MR. COYLE: Number 2.
> THE COURT: Okay.
> MR. COYLE: I should have given you a number.
> THE COURT: Mr. Salter?
> MR. SALTER: Yes, sir, Your Honor.  We struck her because she responded that she had a relative convicted of a crime.  And that's on all of them.  We'll go through them one by one but that was the primary reason that we struck her.
> THE COURT: All right.  What's the next one?
> MR. COYLE: The next one is Carolyn O'Neal, the back row.  14, I believe.  Yes.
> THE COURT: Anything on that other than the drug conviction?
> MR. SALTER: Nothing other than that, Judge.

---

[2]*Batson* holds that basing a peremptory strike on the race of the potential juror violates the Equal Protection Clause of the Fourteenth Amendment.

MR. COYLE: Also, on that row a little further over Belinda Smith, Number 17.

THE COURT: Anything other than the manslaughter conviction there?

MR. SALTER: And that–well that's it. She responded that there was a manslaughter conviction. Also that she was a juror where they found a person not guilty. That was a consideration as well.

MR. COYLE: And David Julks, Number 18.

MR. SALTER: That one, Your Honor, is one where I received assistance from the agent who told me that Mr. Julks was occasionally sleeping.

THE COURT: Anything else on Julks?

MR. SALTER: No, sir.

MR. COYLE: And Kimbroughery Taylor. She being on the front row in the middle of the other side.

THE COURT: Anything other than the drugs there?

MR. SALTER: No, sir. Nothing else.

THE COURT: Anything else either of you want to say?

MR. SALTER: Yes, sir. I would like to say, Judge, that in no case did I even note that these jurors I struck were black. It was strictly the majority of my strikes came from the "C" in my notes here. That they were convicted–that they responded they had relatives that were convicted of crimes, and I've got "Cs" dotting my reasons here and that's the only reason.

THE COURT: Anything else, Mr. Coyle?

MR. COYLE: It just appears they were chosen for color upon first blush. The fact that they knew somebody or had someone in their family who had been arrested was that the--

MR. SALTER: No, sir. Convicted.

MR. COYLE: Convicted.

THE COURT: Everyone were drug convictions except the manslaughter, I believe.

MR. SALTER: Yes, sir.

MR. COYLE: That particular criteria in place and the fact that more minorities have, as a rule, more people convicted in their families than does the majority of the population. It's just another route to get to the same place.

MR. SALTER: I certainly was not thinking of that, Judge. I would like to put in evidence maybe my notes here. It shows the breakdown showing all of the "Cs" and almost nothing else in my notes if that would--

THE COURT: Well, why don't you look over your shoulder and see if you can confirm that, Mr. Coyle.

(Mr. Coyle looking over government's notes)

MR. COYLE: That's correct, Your Honor.

THE COURT: All right. Given the facts and circumstances in light of the case that we will be trying next week, and the stated reasons for the challenges, as well as the voir dire that was conducted by the attorneys, both for the government and the defendant–and I might say parenthetically that while not significant, during the strikes of the defendant, too, the Court finds that the challenges of the jurors by the defendant were not shown or have not been shown to be the result of purposeful discrimination and a very legitimate reason has been articulated.

I recognize, as the defendant points out, that there is a tendency in certain areas at least, where there are more, a higher percentage of the black population may have criminal records. But the Court also notes that we started out with a higher percentage of jurors that were black, 35%. Slightly over 35% of the venire that we're striking from–I'm not talking about–I'm talking about just of the 28, not the rest of them, there were 9 blacks out of the 28.

In any event, I do not find that it is a result of purposeful discrimination. So the motion is denied. Let's go on and recess them until Tuesday morning at 9 o'clock. I will remind you I'm not going to swear them so the jeopardy does not attach. So let's go.

(Side-bar concluded)

(R.1-68 at 31-35.)

The case went to trial with a jury consisting of seven whites and five blacks.

The jury convicted Houston on Counts I and II and acquitted him on Count III. The

judge sentenced Houston to 300 months' imprisonment on Count I and 84 months'

6

imprisonment on Count II, these sentences to run consecutively. Houston appeals

both his convictions and his sentences.

## II. Issues on Appeal

To resolve this appeal, we consider (1) whether the prosecutor's exercise of any

of his peremptory challenges was motivated by racial prejudice, and therefore

violated Houston's Fifth Amendment rights, and (2) whether the district court, in

sentencing Houston, committed constitutional or statutory error under *United States*

*v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005).[3]

## III. Standards of Review

We review for clear error a trial judge's finding that a prosecutor has exercised

peremptory strikes free of discriminatory intent. *United States v. Alston*, 895 F.2d

1362, 1366 (11th Cir. 1990). The judge's assessment of the prosecutor's credibility

is entitled to "great deference." *Batson*, 476 U.S. at 98 n.21, 106 S. Ct. at 1724 n.21.

Houston preserved his *Booker* claims for review by appropriate objection in the

district court. Thus, our review of those claims is de novo. *See United States v. Paz*,

405 F.3d 946, 948 (11th Cir. 2005).

---

[3]Houston also contends that he was denied his Fifth Amendment right to the effective assistance of counsel. As this case comes to us on direct appeal, Houston has not developed a factual record sufficient for us to review this claim. *See United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir. 2002). Houston's ineffective assistance claim is thus more appropriately brought as a 28 U.S.C. § 2255 motion, and we decline to address it further. *See id.*

## IV. Discussion

This discussion proceeds in two parts. First, based on the framework outlined in *Batson*, 476 U.S. 79, 106 S. Ct. 1712, and its progeny, we consider whether the district court erred in finding no discriminatory intent in the prosecutor's exercise of peremptory strikes. Second, we consider whether the case should be remanded for resentencing for constitutional or statutory error under *Booker*.

### A. The *Batson* Challenges

Houston contends that the prosecution's exercise of four of its peremptory strikes (venire members Small, O'Neal, Smith, and Taylor)[4] during jury selection violated the Equal Protection Clause of the Fourteenth Amendment. He bases this contention on one of the reasons articulated by the prosecutor for exercising the strikes, arguing that it is facially invalid due to its disparate impact on blacks. Appellant's Br. at 16-20. He also argues that the stated reason, particularly when coupled with the fact that it was disparately applied to white and black venire members, reveals that the prosecutor acted out of purposeful intent to discriminate. Appellant's Br. at 20-22. The Government responds, contending that Houston's theory of the disparate impact of the family criminal history criterion on blacks is not

---

[4]At the *Batson* hearing, Houston also contested the prosecution's peremptory strike of venire member Julks (R.1-68 at 32), but the prosecution's reason for striking him–that he was sleeping during voir dire–is not challenged on appeal.

cognizable under *Batson*, Appellee's Br. at 17, and that Houston cannot show that the prosecutor's stated reasons for exercising his peremptory challenges were mere pretext for discriminatory intent. Appellee's Br. at 20. The Government also contends that Houston waived any argument based on disparate treatment of similarly situated white and black venire members because he failed to make any such argument in the district court. Appellee's Br. at 19.

We examine claims of racial discrimination in jury selection under the standards outlined in *Batson v. Kentucky*.[5] *Batson* establishes a burden-shifting approach that allows a trial court to determine whether peremptory strikes were the result of racial animus. First, the defendant must establish a prima facie case to raise the inference of discriminatory intent. *Batson*, 476 U.S. at 93-94, 106 S. Ct. at 1721. Once the prima facie case is established, the government may rebut the inference by articulating legitimate, race-neutral reasons for its exercise of its peremptory strikes. *Id.* at 94, 106 S. Ct. at 1721.

---

[5]The *Batson* case arose out of a state-court conviction, and the Supreme Court based its holdings on the Equal Protection Clause of the Fourteenth Amendment, which applies by its terms only to the states. *See* U.S. Const. amend IV, § 1. However, the Supreme Court has established that the Due Process Clause of the Fifth Amendment impliedly imposes the same obligations on the federal government as does the Equal Protection Clause on the states, and any alleged violations of those obligations are analyzed in the same way as an alleged violation of the Equal Protection Clause by a state actor. *See Bolling v. Sharpe*, 347 U.S. 497, 499, 74 S. Ct. 693, 694 (1954). We recognize that a *Batson* violation exists even if only one peremptory strike resulted from discriminatory intent. *See McNair v. Campbell*, 416 F.3d 1291, 1311 (11th Cir. 2005).

After the government articulates such reasons, the court must evaluate the credibility of the stated justifications based on the evidence placed before it. *Id.* at 98, 106 S. Ct. 1724. When the prosecutor, in response to a *Batson* challenge, states his reasons for striking black jurors, he must stand or fall on the plausibility of the reasons stated. *Miller-El v. Dretke*, __ U.S.__, __,125 S. Ct. 2317, 2332 (2005). The court must then evaluate the plausibility of the stated reasons "in light of all evidence with a bearing on [them]." *Id.* at 2331. The defendant maintains at all times, however, the ultimate burden of proving intentional discrimination. *Batson*, 476 U.S. at 94 n.18, 106 S. Ct. at 1721 n.18.

We note at the outset that the district court did not explicitly determine whether Houston made out a prima facie case of discrimination. *See id.* at 94-97, 106 S. Ct. at 1721-23 (establishing the prima facie case as the first step in a *Batson* challenge and articulating various ways in which a prima facie case can be established). Our precedent clearly holds that the establishment of a prima facie case is an "absolute precondition" to the prosecution's burden to articulate race-neutral reasons for the exercise of its strikes. *United States v. Ochoa-Vasquez*, 428 F.3d 1015, 1038 (11th Cir. 2005) (quoting *Ctrl. Ala. Fair Hous. Auth. v. Lowder Realty Co.*, 236 F.3d 629, 636 (11th Cir. 2000) (internal quotation marks omitted)). But the judge in this case elicited non-discriminatory reasons for the exercise of the prosecution's peremptory

10

strikes and ruled on the ultimate issue of intentional discrimination. The Supreme Court instructs that once a trial judge rules on this question, the burden to establish a prima facie case is mooted. *See Hernandez v. New York*, 500 U.S. 352, 358, 111 S. Ct. 1859, 1866 (1991) (plurality opinion). And, the Government does not contend that Houston's appeal should fail because he did not establish a prima facie case. Accordingly, we limit our review in this case to the prosecutor's articulation, and the judge's acceptance, of the stated justifications for the strikes.

Houston makes two arguments in support of his contention that the prosecutor impermissibly used race as the reason for the exercise of some of his peremptory challenges. First, he argues that the prosecutor's stated reason for dismissing four of the black venire members (Small, Smith, O'Neal, and Taylor), that they had family members with criminal histories, is not race-neutral because it statistically affects more blacks than whites. We need only review the dismissals of Small, Taylor, and O'Neal because the prosecution articulated an additional reason for dismissing Smith–that she had previously served on a jury that returned a verdict of not guilty (R.1-68 at 32)–and that reason is not challenged on appeal, nor does Houston argue that Smith's dismissal was the result of a "mixed motive." *See Wallace v. Morrison*, 87 F.3d 1271, 1274-75 (11th Cir. 1996). Houston includes in his briefs sociological data indicating that significantly more blacks than whites, as a percentage of their

11

relative subgroups, are convicted of crimes in the United States. Utilizing these data, Houston argues that requiring the venire members to indicate whether they have had any family members convicted of crimes, and then using their positive responses as the sole justification for disqualifying them, is a strategy that impacts blacks more heavily than whites.

In civil rights parlance, this argument is known as a "disparate impact" claim. *See* 42 U.S.C. § 2000e-2(k). In such a claim, the complaining party alleges racial discrimination through the use of a facially race-neutral sorting device that has the effect of excluding more blacks than whites. *See generally Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S. Ct. 849 (1971). This type of claim can be distinguished from a "disparate treatment" claim, which directly alleges that blacks have been singled out and treated differently from whites solely because of their race. The Supreme Court has held that claims of disparate impact are not cognizable under the Equal Protection Clause of the Fourteenth Amendment, or by extension the Due Process Clause of the Fifth Amendment. *See Washington v. Davis*, 426 U.S. 229, 239, 96 S. Ct. 2040, 2047 (1976). Thus, a disparate impact theory cannot be used by itself to invalidate the prosecution's stated reasons at step two of the *Batson* inquiry.

In response to the prosecutor's question at voir dire about family members with criminal histories, Small responded that her son had recently been convicted on drug

12

charges, and that he was currently incarcerated. (R.1-68 at 25.) Taylor, responding to the same question, stated that her cousin had been convicted of drug possession about five years before the day of Houston's voir dire. (R.1-68 at 28.) O'Neal's response to the familial criminal history question was that one of her nephews had been convicted of armed robbery six or seven years before the date of Houston's voir dire. (R.1-68 at 26-27.) This court has previously held that prior family involvement with drug charges is a "reasonably specific" and "neutral" explanation for a prosecutor's exercise of peremptory strikes. *See United States v. Alston*, 895 F.2d 1362, 1367 (11th Cir. 1990). We see no reason why prior family involvement with armed robbery would not be considered as neutral an explanation for a strike–particularly when the case to be tried includes an armed robbery charge.[6] Thus, the prosecutor met his burden at *Batson*'s second stage to articulate legitimate, race-neutral reasons for exercising his strikes.

Houston contends that, even if the prosecutor's stated reason is legitimate on its face, its disparate impact is evidence of the prosecutor's underlying intent to discriminate. The Supreme Court has held that evidence that the prosecutor used a sorting device with a disparate impact on different races may be considered as

---

[6]The colloquy between court and counsel that we have quoted reflects that O'Neal's nephew had been convicted on a drug charge rather than an armed robbery charge. Since either crime supports a finding that the reason was race-neutral, we need not address this confusion.

evidence of purposeful discrimination at *Batson*'s third step. *Hernandez*, 500 U.S. at 362, 111 S. Ct. at 1868 (plurality opinion); *see also id.* at 376, 111 S. Ct. at 1875 (Stevens, J., dissenting); *cf. Davis*, 426 U.S. at 242, 96 S. Ct. at 2048-49. We therefore recognize that the district court had circumstantial evidence before it at the third stage of its *Batson* inquiry that could support a finding of discriminatory intent. But *Hernandez* does not *require* the court to draw that conclusion, and the court here did not. The court instead viewed the exclusion of those whose family members had criminal histories as "very legitimate" (R.1-68 at 34), and found that the strikes were not the result of purposeful discrimination. (R.1-68 at 35.)

The *Hernandez* Court cited several factors that the judge could have considered when deciding whether to believe the prosecutor's stated reason despite its disparate impact. *Id.* at 369-70, 111 S. Ct. at 1871-72. Here, too, there are other factors that support the court's finding that there was no discriminatory intent. The prosecutor was of the same race as the defendant, he was forthcoming and non-evasive in his statement of his reasons for exercising his strikes, and he offered clearly legitimate reasons unrelated to any alleged disparate impact when explaining his strikes of two of the five black potential jurors. When the judge questioned him about his strikes, he responded that he had not even known the races of the venire members when deciding which ones to strike. He claimed that he had taken no notes on the races of

14

the venire members at voir dire. When asked, Houston's attorney looked over the prosecutor's shoulder at his jury selection notes and confirmed this statement. (R.1-68 at 34.) At no time during the *Batson* hearing did the prosecutor show any sign of evasiveness or deception. The court could have considered all of these factors as weighing heavily in favor of the prosecutor's credibility despite the disparate impact of the prosecutor's stated reason. The *Batson* Court explained that the trial judge's assessment of the prosecutor's credibility in offering race-neutral reasons for exercising his peremptory challenges is entitled to "great deference." *Batson*, 476 U.S. at 98 n.21, 106 S. Ct. at 1724 n.21. The trial judge in this case determined that the prosecutor standing before him was worthy of his trust. We find no clear error.

Houston's other contention regarding *Batson*'s third step is that the prosecution's sole stated reason for excluding venire members Small, O'Neal, and Taylor (and one of two reasons for striking venire member Smith) from the jury is pretextual because it applies with equal force to four white venire members whom the prosecution did not strike.[7] We have acknowledged in the past that "comparing the attributes of the black and white venirepersons will aid the trier of fact and a reviewing court in determining whether the asserted reasons are pretextual or not."

---

[7]We have already decided that we need not review the dismissal of Smith because the prosecutor's other reason for dismissing her is not challenged on appeal, and Houston makes no "mixed motive" argument.

15

*Alston*, 895 F.2d at 1367 n.5. And, the Supreme Court has recently held that if the prosecutor's stated reason for striking black venire members applies with equal force to white venire members, and the similarly situated white members are not struck, that is evidence tending to prove purposeful discrimination at *Batson*'s third step. *Miller-El v. Dretke*, __ U.S.__, __, 125 S. Ct. 2317, 2320 (2005).

Here, the prosecution offered as its only reason for dismissing venire members Small, O'Neal, and Taylor that they had family members who had been convicted of crimes. It is undisputed that four of the white venire members that the prosecution did not strike also had family members convicted of crimes. But Houston never brought this fact to the attention of the court, even though the court gave him ample opportunity to do so. *Batson* makes it clear that the party contesting a peremptory strike maintains the burden of proof throughout the three stages of the court's inquiry. 476 U.S. at 94 n.18, 106 S. Ct. at 1721 n.18. Once the prosecution has offered a legitimate, non-discriminatory reason for exercising its strikes, this burden requires the party contesting the strike to demonstrate that the prosecution's stated reasons are pretextual. *See Alston*, 895 F.2d at 1374 (Hatchett, J., concurring); *accord United States v. Guerra-Marez*, 928 F.2d 665, 673 n.9 (5th Cir. 1991).

Here, Houston did not suggest to the trial judge that there were similarly situated white venire members whom the prosecution did not strike. Thus, we do not

16

have the benefit of the prosecutor's explanation for why he struck the black venire members rather than the white venire members now alleged to be similarly situated. And we do not have the benefit of a finding by the trial judge as to the credibility of such explanations. As we have stated in the past: "'Whenever a litigant has a meritorious proposition of law which he is seriously pressing upon the attention of the trial court, he should raise that point in such clear and simple language that the trial court may not misunderstand it.'" *United States v. Reyes Vasquez*, 905 F.2d 1497, 1500 (11th Cir. 1990) (quoting *Clark v. Lindley Motor Co.*, 268 P. 860, 861 (Kan. 1928)). We generally do not address on appeal arguments not clearly presented to the district court. *See Smith v. Horner*, 839 F.2d 1530, 1534-35 (11th Cir. 1988) (declining to reverse the district court on appeal based on a disparate impact theory in a Title VII case when that argument was not fairly presented to the court at trial). We apply that general rule in this case.

Houston's attorney contended at oral argument that the Supreme Court's recent decision in *Miller-El* places a duty on the trial court to conduct an independent inquiry into the relevant facts and circumstances bearing on the credibility of the prosecution's stated reasons, including the duty to develop the factual record by

17

questing the attorneys.[8] We find no basis for such a duty in *Miller-El*.[9] Requiring

the court to develop the defendant's arguments through examination of the prosecutor

would make the judge an advocate rather than a neutral arbiter. Houston never

alerted the court to the existence of white venire members whom he now contends

were similarly situated and whom the prosecution did not strike despite their familial

criminal histories. We find no error in the court's failure to draw comparisons that

no party asked it to draw.[10]

---

[8]We note that *Miller-El* came before the Supreme Court in a procedural posture very different from the posture of this case. The *Miller-El* Court was asked to review on *Batson* grounds a petition for writ of habeas corpus based on a challenge pursuant to *Swain v. Ala.*, 380 U.S. 202, 85 S. Ct. 824 (1965) to a jury selection that had occurred before *Batson* was decided. *See Miller-El*, __ U.S. at __,125 S. Ct. at 2322-23. The Supreme Court has allowed a *Swain* objection made before *Batson* was handed down to do service to preserve a *Batson* claim for review. *See Griffith v. Ky.*, 479 U.S. 314, 107 S. Ct. 708 (1987). But unlike *Batson*, which requires a burden-shifting analysis, *Swain* required a showing that a systemic pattern of racial discrimination had led to a discriminatory exercise of peremptory strikes. Thus, the trial court in *Miller-El* did not engage in any burden-shifting analysis, and the parties did not make arguments based on any such approach. Faced with this situation, the Supreme Court conducted its own evidentiary review. *See Miller-El*, __ U.S. at __,125 S. Ct. at 2326 n.1. This fact, however, does not establish that we must do the same when directly reviewing a challenge to a jury selection that occurred long after *Batson* was decided, when the parties and the judge were well aware of *Batson*'s burdens.

[9]In fact, the Court's decision in *Miller-El* recognizes that there is a difference between the evidence that can be considered by a court reviewing a habeas petition and "theories about that evidence," which will only be considered by a court of appeals if they were offered at the trial court level. *See Miller-El,* ___ U.S. at ___, 125 S. Ct. at 2326 n.2; *see also United States v. Reyes Vasquez*, 905 F.2d 1497, 1500 (11th Cir. 1990). Perhaps if Houston had offered a disparate treatment theory of racial discrimination, the court would have examined the characteristics of the white venire members not struck, but since this theory of the evidence was not offered, we have no way of knowing.

[10]At oral argument, the Government offered several plausible explanations as to why it chose not to strike the white venire members with family criminal histories. But we have no

18

## B. *Booker* Error

Houston contends that the district judge violated his Sixth Amendment rights, as outlined in *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005), by sentencing him pursuant to the United States Sentencing Guidelines, treating them as mandatory. Error under *Booker* can manifest itself in two ways. The constitutional variety of *Booker* error occurs when, under a sentencing guidelines system binding on the district court, the judge imposes a sentence above that authorized by the facts found by the jury or admitted by the defendant. *United States v. Lee*, 427 F.3d 881, 891 (11th Cir. 2005). Statutory *Booker* error, on the other hand, occurs when the judge sentences the defendant treating the United States Sentencing Guidelines as binding, regardless of the sentence imposed. *Id.*

If the defendant establishes constitutional *Booker* error, we will vacate the sentence unless the Government can show, beyond a reasonable doubt, that the error was harmless because it did not contribute to the sentence imposed. *United States v. Paz*, 405 F.3d 946, 948 (11th Cir. 2005). Alternatively, if the court committed statutory *Booker* error, we will vacate the sentence unless the Government can show that, viewing the proceedings in their entirety, the error had little to no effect on the

---

findings as to the credibility of these explanations because the credibility of the prosecutor's articulated reason for his strikes was attacked only on a disparate impact theory.

sentence. *See Kotteakos v. United States*, 328 U.S. 750, 762-64, 66 S. Ct. 1239, 1246-48 (1946); *Lee*, 427 F.3d at 891 n.5.

Houston contends that his sentence should be vacated based on both constitutional and statutory *Booker* error. The Government contends that the district court did not commit constitutional error, and that the statutory error was harmless.

### 1. Constitutional *Booker* Error

Houston contends that the district court violated *Booker*'s constitutional rule by including in the calculation of his sentence under the United States Sentencing Guidelines, which were then binding on the judge, the fact that two of his prior felony convictions were crimes of violence. Houston did not admit this fact, and the prosecution did not prove it to the jury beyond a reasonable doubt. The *Booker* Court reaffirmed the holding in *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 2362-63 (2000), that any fact, other than the fact of a prior conviction, that increases the defendant's sentence beyond the prescribed statutory maximum must be admitted by the defendant or proved to the jury beyond a reasonable doubt. *See Booker*, 543 U.S. at 244, 125 S. Ct. at 756 (citing *Apprendi*, 530 U.S. at 490, 120 S. Ct. at 2362-63).

Houston argues that the determination that his two prior felonies were crimes of violence under U.S.S.G. § 4B1.1 for the purposes of increasing both his offense

level and his criminal history category was a determination of fact. This court has recently rejected this exact argument. *United States v. Gibson*, 434 F.3d 1234, 1247-48 (11th Cir. 2006). Determining whether the defendant's prior convictions fall within the category of offenses described by U.S.S.G. § 4B1.1 is a question of law, to be decided by the court, not a question of fact. *Gibson*, 434 F.3d at 1247. Thus, the district court did not violate Houston's Sixth Amendment rights when it determined that Houston's prior convictions were crimes of violence.

## 2. Statutory *Booker* Error

Houston also contends that his sentence must be vacated because the district court sentenced him under a mandatory Guidelines scheme. *See United States v. Shelton*, 400 F.3d 1325, 1330-31 (11th Cir. 2005); *see also Booker*, 543 U.S. at 259, 125 S. Ct. at 764 (excising the portions of the Sentencing Act that make the Guidelines binding on the sentencing judge). The Government does not dispute that the court erred, but argues that the error was harmless. The Government bears the burden of establishing harmlessness. *United States v. Robles*, 408 F.3d 1324, 1327 (11th Cir. 2005), and if on appeal this court cannot determine whether the sentence would have been different under an advisory Guidelines scheme, we will not find the error to have been harmless. *Cf. id.*

21

The judge calculated the relevant Guidelines range for Count I as 360 months to life. The 2003 Guidelines manual states that if the calculated Guidelines range exceeds the statutory maximum penalty for a particular crime, then the statutory maximum becomes the effective Guidelines range. U.S.S.G. § 5G1.1(a). Pursuant to this rule, the judge sentenced Houston to the statutory maximum term of 300 months' imprisonment on Count I. (R.1-61 at 15-16.) The judge also imposed a consecutive sentence of 84 months' imprisonment, the statutory minimum for Count II. (R.1-61 at 15-16.) *See* 18 U.S.C. § 924(c).

The Government cites the fact that the judge sentenced Houston to the statutory maximum for Count I as evidence that he would not have imposed a more lenient sentence in the absence of a binding Guidelines scheme. However, what the judge imposed was very clearly a Guidelines sentence. Thus, rather than proving that he would impose the same sentence in the absence of a binding Guidelines scheme, the judge's sentencing decision just as likely suggests that he sought to follow the dictates of the Guidelines to the letter. Moreover, the Guidelines required a sentence at least equal to the statutory minimum for Count II, *See* U.S.S.G. § 2.K2.4(b). The judge, in fact, imposed a sentence at the statutory minimum, further contradicting the conclusion that the Government asks us to draw. In short, neither the judge's statements at sentencing nor the ultimate sentence imposed give this court any clear

22

indication of what the district judge would have done if not bound by the Guidelines. Given this uncertainty, the Government has met not its burden to establish harmlessness.

## V. Conclusion

Based on the foregoing discussion, we conclude that Houston's convictions should be affirmed, but that his sentences should be vacated and the case remanded for resentencing.

**CONVICTIONS AFFIRMED, SENTENCES VACATED, AND CASE REMANDED FOR RESENTENCING**.