[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 2, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-15587
Non-Argument Calendar

_____

D. C. Docket No. 06-00271-CR-W-N

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

PRESTON GRICE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(July 2, 2009)

Before TJOFLAT, BLACK and BARKETT, Circuit Judges.

PER CURIAM:

Preston Grice appeals his convictions for conspiracy to distribute and possess with intent to distribute marijuana, cocaine base, and cocaine, in violation of 21 U.S.C. § 846, and for distribution and possession with intent to distribute marijuana, cocaine base, and cocaine, in violation of § 841(a)(1). Grice challenges (1) the validity of the search warrant issue for the residence at 589 Holcombe Street; (2) the traffic stop which led to his arrest; and (3) the Government's exercise of a peremptory challenge during jury selection. We find no merit in these challenges, and accordingly affirm.

I.

The events that led to the issuance of the search warrant and Grice's arrest are thoroughly set forth in the magistrate judge's Report and Recommendation which formed the basis of the district court's denial of Grice's motion to suppress and are implicated in Grice's first two challenges.

> On November 1, 2005, at approximately 11:45 to 12:00 a.m., Corporal R. J. Steelman, a police officer with the Montgomery Police Department, received information from a confidential source (CS) that Preston Grice and "Corey," along with someone else called "Bunky," were at 879 Holcombe Street cooking or cutting a large amount of crack cocaine. The CS indicated that a black Cadillac and a dark mini-van, as well as an older dark blue or black truck and an older Chevy Caprice were parked at the residence, which was next to two vacant lots at the corner of Holcombe and South Street. Steelman ran Preston Grice's name through the police department's narcotics

files, and his name came up in the database as being involved with drugs in some way.

At approximately 12:20 or 12:30 pm on the same day, Steelman drove to the 800 block of Holcombe Street, but could not locate the house or the vehicles. He then proceeded to the 500 block of the same street and found a black pick-up truck, a mini-van and a black Cadillac at 589 Holcombe Street ("the residence"), which was a white single story dwelling near the corner of Holcombe and South Streets, with a vacant lot on either side. A Caprice was parked at the rear of the residence. Steelman set up surveillance near this residence. He observed foot traffic throughout the area – people walking down the street and a man (later identified as defendant [Corey] Harvey) coming from the front of this house and meeting cars. Steelman believed that these activities were consistent with street level drug dealing.

After 20 or 30 minutes passed, a black male (later identified as Leenandora Woods) came out of the residence with a plastic bag in his hand and got into the Cadillac. Steelman called Sergeant Drummond on the radio, told him what he had heard and seen, and asked him to get the Cadillac stopped. Corporal Mills, who was also with the Montgomery Police Department, stopped the Cadillac at Drummond's request. Woods consented to a search of the vehicle, and no drugs were found; however, a narcotics dog thereafter alerted on the center console. Woods took off running on foot, and Lieutenant Bullard used his Taser to stop him. Corporal Conway, the K-9 officer who had arrived with the drug dog, found approximately 450 grams of crack cocaine and 99 grams of powder cocaine in the console area of the car. . . .

When Steelman was informed of the results of the search of the Cadillac, he left the residence to prepare an application for a search warrant at the police department's Special Operations Division, and Lieutenant Caviness and Captain Hughes set up surveillance in his place. At some point, DEA special agent Neil Thompson – who had also received a call from the CS, and was riding with Drummond – participated in the surveillance. Meanwhile, Detective Hamil typed the warrant affidavit as Steelman dictated it. While they were working on the affidavit, officers still on Holcombe Street saw four other vehicles leave the residence. One of these was a black Ford

3

Escort. Detective Wright stopped this car, which took off and had to be pursued. During the pursuit, Wright observed a large quantity of marijuana thrown from the window. A mini-van driven by Preston Grice also left the residence and was stopped. No drugs were found in Grice's possession or in this van.

When Steelman and Hamil completed the warrant affidavit, they took it to municipal judge Troy Massey, who issued a search warrant for the residence. Police executed the warrant and found documents there in the name of Corey Harvey. Harvey, who was observed across the street, was taken into custody. According to the evidence log, police seized numerous bags and bricks of marijuana, bags of crack cocaine, digital scales, a quantity of U.S. currency, and multiple firearms from the residence.

Report and Recommendation, March 15, 2007.

The denial of a motion to suppress presents a mixed question of law and fact. United States v. Delancy, 502 F.3d 1297, 1304 (11th Cir. 2007). We review the district court's factual findings for clear error and its interpretation and application of the law de novo. Id. "Probable cause to support a search warrant exists when the totality of the circumstances allow[s] a conclusion that there is a fair probability of finding contraband or evidence at a particular location." United States v. Brundidge, 170 F.3d 1350, 1352 (11th Cir. 1999). The "veracity" and "basis of knowledge" of an informant's tip are "relevant considerations in the totality of the circumstances analysis," and "a deficiency in one may be compensated for . . . by a strong showing as to the other." Id. at 1352-53. Further,

4

"some other indicia of reliability" may make up for a deficiency in an informant's veracity or basis of knowledge, "such as corroborating evidence gathered by law enforcement." United States v. Foree, 43 F.3d 1572, 1576 (11th Cir. 1995).

Search warrant affidavits are presumptively valid. Franks v. Delaware, 438 U.S. 154, 171, 98 S.Ct. 2674, 2684, 57 L.Ed.2d 667 (1978). A search warrant must be voided and the fruits of the search excluded, however, if the affidavit supporting the search warrant contains a false statement made knowingly and intentionally or with reckless disregard for the truth. Id. at 155-56, 98 S.Ct. at 2676. Nevertheless, a warrant is valid "when material that is the subject of the alleged falsity or reckless disregard is set to one side, [and] there remains sufficient content in the warrant affidavit to support a finding of probable cause." Id. at 171-72, 98 S.Ct. at 2684. Thus, a defendant must show (1) "that the alleged misrepresentations or omissions were knowingly or recklessly made" and (2) "that the result of excluding the alleged misrepresentations and including the alleged omissions would have been a lack of probable cause for issuance of the warrants." United States v. Novaton, 271 F.3d 968, 986-87 (11th Cir. 2001).

The district court did not err in denying Grice's motion to suppress evidence. The was no clear error in the court's adoption of the magistrate judge's

finding that the affidavit underpinning the warrant, which established probable cause, was not the product of knowingly or recklessly made false information.[1]

## II.

Grice argues that the district court erred in denying his motion to suppress evidence seized as a result of a warrantless stop of his vehicle. He submits that the stop of his vehicle, his arrest, and the seizure of his keys was unlawful—conducted solely for investigative purposes. He had not violated traffic laws, and they had no reason to believe that he was connected to the Holcombe Street residence, or that he possessed illegal drugs or contraband.

"A traffic stop is a seizure within the meaning of the Fourth Amendment." United States v. Purcell, 236 F.3d 1274, 1277 (11th Cir. 2001). "A traffic stop . . . is constitutional if it is either based upon probable cause to believe a traffic violation has occurred or justified by reasonable suspicion in accordance with [Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)]," which requires that the officers "have a reasonable, articulable suspicion based on objective facts that an individual is engaged in criminal activity." United States v. Harris, 526 F.3d 1334, 1337 (11th Cir.) (quotation omitted), petition for cert. filed,

---

[1] The affidavit did contain misstatements of fact, but they were unintentional and clearly did not render the warrant invalid.

(U.S. Aug. 6, 2008) (No. 08-6074). "A determination of reasonable suspicion is based on the totality of the circumstances, and [i]t does not require officers to catch the suspect in a crime." Id. (quotation omitted). "Instead, [a] reasonable suspicion of criminal activity may be formed by observing exclusively legal activity." Id.

"Probable cause to arrest exists where the facts and circumstances within the officers' knowledge, of which they had reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that an offense has been or is being committed." United States v. Ollet, 848 F.2d 1193, 1195 (11th Cir. 1988). "[C]ircumstances unique to the vehicle context justify a search incident to a lawful arrest when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." Arizona v. Gant, 556 U.S. ___, 129 S.Ct. 1710, 1719, 173 L.Ed.2d 485 (2009) (quotation omitted). In such a case, "the offense of arrest will supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein." Id.

The district court did not err in denying Grice's motion to suppress evidence seized as a result of the traffic stop because the police had reasonable suspicion to believe that he was engaged in criminal activity, had probable cause for his arrest

7

after discovering that he was the driver of the vehicle, and were entitled to search the vehicle incident to his lawful arrest.

III.

Grice argues that the district court erred in denying his challenge to the Government's peremptory strike of a juror under Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Citing Miller-El v. Dretke, 545 U.S. 231, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005), he maintains that the Government's reason for striking the juror was insufficient and the court erred in failing to conduct a meaningful voir dire regarding the issue.

We review a district court's decision regarding jury selection under Batson de novo and the court's underlying factual findings for clear error. United States v. Campa, 529 F.3d 980, 992 (11th Cir. 2008), petition for cert. filed, (U.S. Jan. 30, 2009) (No. 08-987). When reviewing the district court's resolution of a Batson challenge, we give "great deference to a district court's finding as to the existence of a prima facie case." United States v. Allen-Brown, 243 F.3d 1293, 1296 (11th Cir. 2001). The Constitution forbids the prosecutor to challenge potential jurors solely on account of their race. Campa, 529 F.3d at 997. Our analysis of a Batson challenge involves three steps:

8

(1) the objector must make a <u>prima facie</u> showing that the peremptory challenge is exercised on the basis of race; (2) the burden then shifts to the challenger to articulate a race-neutral explanation for striking the jurors in question; and (3) the trial court must determine whether the objector has carried its burden of proving purposeful discrimination.

<u>Id.</u> at 998 (quotation omitted).

To establish a <u>prima facie</u> case of purposeful discrimination, the defendant must show: (1) that "he is a member of a cognizable racial group" and that "the prosecutor . . . exercised peremptory challenges to remove from the venire members of [his] race"; and (2) that "these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race." <u>United States v. Dennis</u>, 804 F.2d 1208, 1210 (11th Cir. 1986). In determining whether the defendant has established a <u>prima facie</u> case, we consider "all relevant circumstances," including "a 'pattern' of strikes against black jurors included in the particular venire." <u>Id.</u>

We consider several factors in determining whether the totality of the circumstances shows a "pattern" that creates an inference of discrimination, including (1) "whether members of the relevant racial or ethnic group served unchallenged on the jury"; (2) "whether the striker struck all of the relevant racial

or ethnic group from the venire, or at least as many as the striker had strikes";
(3) "whether there is a substantial disparity between the percentage of jurors of a
particular race or ethnicity struck and the percentage of their representation on the
venire"; and (4) "whether there is a substantial disparity between the percentage of
jurors of one race [or ethnicity] struck and the percentage of their representation
on the jury." United States v. Ochoa-Vasquez, 428 F.3d 1015, 1044-45 (11th
Cir. 2005).

Once the defendant makes a prima facie showing, the burden shifts to the
prosecution to explain, in clearly and reasonably specific terms, the legitimate
race-neutral reason for striking the juror. Batson, 476 U.S. at 97, 98 n.20, 106
S.Ct. at 1723, 1724 n.20. "After the government articulates such reasons, the
court must evaluate the credibility of the stated justifications based on the
evidence placed before it." United States v. Houston, 456 F.3d 1328, 1335 (11th
Cir. 2006). Nevertheless, the defendant retains the ultimate burden of proving
intentional discrimination. Id.

In evaluating the credibility of the prosecution's proffered race-neutral
reasons for a strike, we consider whether the "proffered reason for striking a black
panelist applies just as well to an otherwise-similar nonblack who is permitted to
serve." Miller-El, 545 U.S. at 241, 125 S.Ct. at 2325. Other considerations

10

include a prosecutor's mischaracterization of <u>voir dire</u> testimony, substitution of additional reasons for a strike when confronted with a defendant's rebuttal, or failure to conduct a meaningful <u>voir dire</u> examination on the subject of the prosecutor's concern regarding the panelist. <u>Id.</u> at 244-46, 125 S.Ct. at 2327-28. Additionally, any "broader patterns of practice during the jury selection" should be considered, such as evidence of the government's general practice of excluding black venire members from juries, use of arbitrary "jury shuffl[ing]," or use of contrasting <u>voir dire</u> questions to black and nonblack panel members. <u>Id.</u> at 253-55, 125 S.Ct. at 2332-33.

Here, the district court did not err in denying Grice's <u>Batson</u> challenge because the Government provided a genuine race-neutral reason for striking the juror.

AFFIRMED.