[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-15504
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 4, 2012
JOHN LEY
CLERK

D.C. Docket No. 1:09-cr-00097-ODE-LTW-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EDUARDO VEGA,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(January 4, 2012)

Before TJOFLAT, EDMONDSON, and CARNES, Circuit Judges.

PER CURIAM:

Eduardo Vega appeals his convictions for carjacking, in violation of 18 U.S.C. § 2119, and using a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c). Vega contends that the district court: (1) abused its discretion in excluding his proffered expert testimony as to the reliability of eyewitness identification; (2) erred in denying his challenge to the government's discriminatory use of peremptory strikes; (3) erred in giving a modified Allen charge to the jury, see Allen v. United States, 164 U.S. 492, 17 S.Ct. 154 (1896); and (4) abused its discretion in removing, after jury deliberations had begun, a juror who indicated that he was biased. Finally, Vega argues that there was insufficient evidence to support his convictions.

I.

A federal grand jury indicted Vega on charges of carjacking, using a firearm during a crime of violence, and possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g). A superceding grand jury indictment excluded the firearm possession charge. Vega pleaded not guilty to the remaining charges.

Before trial Vega moved the district court to rule on the admissibility of his expert witness, a psychologist whose testimony would purportedly show that certain factors, some of which were present in this case, would diminish the reliability of eyewitness identification. The district court denied the motion,

2

characterizing the testimony as a generalized critique on eyewitness credibility. The district court found the testimony had little probative value and would not assist the jury in determining the credibility of each eyewitness. It added that Vega could question the eyewitnesses and raise doubt about their testimony through cross-examination, jury instructions, and closing arguments.

During jury selection Vega raised a Batson challenge, alleging that the government had improperly used all six of its peremptory challenges to exclude African-Americans from the jury because of their race. See Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712 (1986). The district court found that Vega had made a prima facie showing of discrimination but rejected the challenge after the government offered race-neutral reasons for the challenges, which Vega did not rebut.

At trial the government presented a series of witnesses who identified Vega as the carjacker. Atlanta police officer Marc House testified that he was inside an Atlanta restaurant that day and observed the carjacking. He later identified Vega in a photo lineup and at trial as the carjacker. The driver of the stolen SUV, Maria Lara, also testified that in a photo line up she had identified Vega as the carjacker. Also a Fulton County Police detective, Tommy Grier, testified that he was "a hundred percent positive" that Vega was the carjacker he saw fleeing the SUV

3

following its collision with a tractor trailer during a police chase.

The district court submitted the case to the jury. One day into deliberations the jury foreperson informed the district court judge that the jury was unable to reach a consensus because several jurors were "locked into their decision and have been" since the start of deliberations. The district court then gave the jury a modified <u>Allen</u> charge, encouraging it to reach a verdict if possible. In those instructions the district court informed the jury that if it were unable to reach a verdict, there would have to be a new trial, and it noted the time and expense already expended on the present trial. The district court also expressed concern that some jurors became fixed in their positions immediately, and it urged the jury to fully deliberate the issues but not to "give up your honest beliefs solely because others think differently or merely to get the case over with."

Later the jury informed the district court that one of the jurors insisted he was biased because he was connected with an earlier violent crime. The court interviewed that juror in chambers with counsel for both parties present. The juror described a situation 17 years ago when his brother-in-law and his best friend were accused of a crime. He said that he had been questioned by police and insisted that the only reason he was not also ensnared in that investigation was because of exculpatory evidence from his time card at work. The juror repeatedly told the

4

district court that he could not be unbiased in this trial because of his earlier experience. The district court then dismissed the juror from the jury and pursuant to Federal Rule of Criminal Procedure 23(b)(3) ordered the remaining eleven jurors to continue deliberations. There were no alternate jurors. Vega's counsel did not object to dismissal of the juror until the next business day.

The jury convicted Vega of both charges. The court then entered judgment on the verdict and sentenced Vega to 78 months in prison for the carjacking conviction and 120 months in prison for the firearm conviction, both to run consecutively for a total of 198 months. This is his appeal.

## II.

Vega first contends that the district court erred in not admitting testimony from his expert witness. We review for abuse of discretion a district court's decision as to the admissibility of expert testimony. United States v. Frazier, 387 F.3d 1244, 1258 (11th Cir. 2004) (en banc). We have "consistently looked unfavorably" upon expert testimony about the reliability of eyewitness identification. United States v. Smith, 122 F.3d 1355, 1357 (11th Cir. 1997). And we have held "that a district court does not abuse its discretion when it excludes expert testimony on eyewitness identification." Id. at 1359. The district court therefore did not abuse its discretion in excluding Vega's expert witness on

eyewitness credibility.

### III.

Vega also argues that the district court erred in denying his <u>Batson</u> challenge. We review <u>de</u> <u>novo</u> <u>Batson</u> challenges to jury selection but review any underlying factual findings only for clear error. <u>United States v. Campa</u>, 529 F.3d 980, 992 (11th Cir. 2008). "For a factual finding to be clearly erroneous, [we], after reviewing all of the evidence, must be left with a definite and firm conviction that a mistake has been committed." <u>United States v. Rodriguez-Lopez</u>, 363 F.3d 1134, 1137 (11th Cir. 2004) (quotation marks omitted). The district court's finding as to why a juror is excused is a factual finding, and the court's credibility determinations are entitled to "great deference." <u>United States v. Gamory</u>, 635 F.3d 480, 495 (11th Cir. 2011).

<u>Batson</u> established a three-step, burden-shifting inquiry to assess whether removal of a potential juror was unconstitutionally discriminatory. <u>United States v. Houston</u>, 456 F.3d 1328, 1335 & n.5 (11th Cir. 2006). First, the defendant must set forth a <u>prima</u> <u>facie</u> case showing that discriminatory animus motivated the government's peremptory strike. If he does, the second step shifts the burden to the government to rebut any inference of discrimination by "articulating legitimate, race-neutral reasons for its exercise of its peremptory strikes." <u>Id.</u> at

6

1335. The government's reason need not be "persuasive, or even plausible; so long as the reason is not inherently discriminatory, it suffices." Gamory, 635 F.3d at 496 (quotation marks omitted). As the third step, the burden then shifts back to the defendant to show that the government's stated reasons are a pretext for discrimination. Houston, 456 F.3d at 1338. The court must evaluate the credibility of the government's explanation in light of all relevant evidence. Id. at 1335.

The district court found that Vega made a prima facie showing of the government's discriminatory exclusion of African-Americans from the jury. Although the government argues that the district court erred, we need not address that finding here. Regardless of the existence of a prima facie case, Vega's Batson challenge fails because we do not have a definite and firm conviction that the district court clearly erred in its conclusion that the government offered race-neutral reasons for the exclusions that Vega failed to show were pretextual.

The government offered the following reasons for its peremptory challenges of jurors:

- Juror Nine was unemployed and the government "felt she had a bad attitude about being here."

- Juror Thirteen worked at a deli and "just from the questions [the

government] asked her, she seemed to be fairly uneducated."

- Juror Seventeen was a young college student without much life experience, and the government believed that younger jurors would be influenced by "popular media and television" shows in expecting evidence to be clear cut.

- Juror Eighteen was elderly and a minister, and the government believed that, in its experience, "the elderly and ministers tend to have a lot of sympathy for young men that have committed crimes."

- Juror Twenty had only worked sporadically since graduating high school in 2003, and the government believed that other jurors were more apt to make decisions based on the evidence than "an unstable person without a steady job."

- Juror Twenty-Four was unemployed until about the start of jury selection, and "he said he was very uncomfortable," "his hands were shaking," and he expressed a need to be home with his wife.

Vega failed to rebut the government's race-neutral reasons as pretextual. He argues that the government's assertion that it sought to exclude unemployed jurors did not apply to Juror Thirteen, the deli worker. However, there was another racially neutral basis that the government gave for that juror's exclusion which Vega does not challenge as pretextual—her apparent lack of education.

8

Likewise Vega does not address the government's race-neutral reasons for excluding Juror Seventeen, choosing instead to argue why that juror did not have a lack of education, which is not the reason the government gave for its strike.

Vega also asserts that the government did not exclude white jurors who were similarly situated to the African-Americans it struck. For instance, the government struck Juror Eighteen because he was elderly and a minister but not Juror Thirty-One, a white man and business analyst for a computer company who also performed volunteer work at his church. But performing volunteer work at a church does not make a person a minister. Vega also asserts that Juror Four, who is white, was unemployed for the last four years yet the government did not reject her as it had Juror Nine and Juror Twenty. Other independent, race-neutral reasons, which Vega does not address, justified the exclusion of those two African-American jurors. They also were not similarly situated to Juror Four, who had a master's degree in health administration and worked as a hospital administrator for five years before deciding to become a homemaker and stay at home with her family's first child.

The district court did not err in denying Vega's Batson challenge.

IV.

Next Vega challenges the district court's Allen charge to the jury. Our

review of "a district court's decision to give an <u>Allen</u> charge is limited to evaluating the coercive impact of the charge." <u>United States v. Trujillo</u>, 146 F.3d 838, 846–47 (11th Cir. 1998) (upholding an Allen charge that specifically requested that "no juror is expected to give up an honest belief"). If, as here, a jury is not polled before the <u>Allen</u> charge is given we will reverse only if we find under the totality of the circumstances the charge was inherently coercive. <u>United States v. Chigbo</u>, 38 F.3d 543, 545 (11th Cir. 1994).

The totality of the circumstances does not compel a finding that the Allen charge was coercive. The district court gave the charge more than a day after deliberations began. See United States v. Bailey, 468 F.2d 652, 664 (5th Cir. 1972) (finding that giving an Allen charge 3.5 hours after deliberations began was not "improperly precipitous" and noting that a charge 1.5 hours into deliberations did not imply coercion), aff'd en banc, 480 F.2d 518, 518 (5th Cir. 1973).[1] Most portions of the district court's charge that Vega takes exception to mirror language this circuit has approved in its pattern Allen charge instructions, except for two. One exception is the court's comment that it was "a little too soon to say that

---

[1] In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions handed down by the Fifth Circuit before October 1, 1981.

10

further consideration won't make any difference," but that comment is innocuous and is implicit in every Allen charge. The other exception is that the court's comment that it was concerned that some jurors might have fixed their positions at the start of deliberations. That comment simply reflected what the note from the jury had said.

There was no abuse of discretion in giving the Allen charge or in any of the comments the district court made in doing so.

V.

Vega also contends that the district court erred in exorcising one of the jurors after deliberations began. We review only for abuse of discretion a district court's decision to excuse a juror after the beginning of deliberations and to continue deliberations with only eleven jurors. United States v. Register, 182 F.3d 820, 839 (11th Cir. 1999); United States v. Shenberg, 89 F.3d 1461, 1472 (11th Cir. 1996). We normally will reverse based on juror dismissal only if the district court removed the juror "without factual support, or for a legally irrelevant reason." Register, 182 F.3d. at 840 (quotation marks omitted). However, when a party does not timely object to a district court's action, the party's challenge of that action on appeal is reviewed only for plain error. United States v. Martinez, 83 F.3d 371, 376 n.5 (11th Cir. 1996). To establish plain error, a defendant must

11

show: (1) error, (2) that is plain, and (3) that affects substantial rights. United States v. Turner, 474 F.3d 1265, 1276 (11th Cir. 2007).

The district court committed no error, much less plain error, in dismissing the juror after he repeatedly told the court that because of a past experience he could not be unbiased in this case. Vega has also failed to show that the district court abused its discretion by proceeding with eleven jurors because there were no alternate jurors.

VI.

Finally, Vega challenges the sufficiency of the evidence to support his convictions. We review de novo whether the evidence was sufficient to sustain a conviction. United States v. Thompson, 473 F.3d 1137, 1142 (11th Cir. 2006). We will view the evidence in the light most favorable to the government, resolving any conflicts in favor of the verdict. United States v. Ward, 197 F.3d 1076, 1079 (11th Cir. 1999). Credibility questions are for the jury, and we will assume that the jury answered them all in a manner that supports the jury's verdict. Thompson, 473 F.3d at 1142.

To convict a defendant of carjacking under 18 U.S.C. § 2119, the government must prove beyond a reasonable doubt that the defendant "(1) with intent to cause death or serious harm (2) took a motor vehicle (3) that had been

transported, shipped or received in interstate or foreign commerce (4) from the person or presence of another (5) by force and violence or intimidation." United States v. Diaz, 248 F.3d 1065, 1096 (11th Cir. 2001) (quotation marks omitted). To convict a defendant of possession of a firearm during a crime of violence under 18 U.S.C. § 924(c), the government must prove beyond a reasonable doubt that the defendant possessed or used a firearm during, and in furtherance of, the commission of a crime of violence. United States v. Belfast, 611 F.3d 783, 814 (11th Cir. 2010), cert. denied, 131 S.Ct. 1511 (2011).

Sufficient evidence supports the jury's guilty verdicts in this case. The government presented eyewitness testimony from Lara, the SUV driver, and from Officer House that Vega stole the SUV after forcing its passengers out at gunpoint. Detective Grier also identified Vega as the driver of the stolen SUV. Vega questioned the credibility of those witnesses' testimony at trial and on appeal. However, the jury was free to make credibility determinations, and it was entitled to resolve those questions in the manner it did. See Thompson, 473 F.3d at 1142. Moreover, the trial evidence established each of the elements of § 2119 and § 924(c).

**AFFIRMED.**

13